WILDE v. THE MERCHANTS' DESPATCH TRANSPORTATION CO.

1. **Common Carrier:** SHIPPING RECEIPT: CONTRACT. Where a common carrier, upon the delivery of merchandise for transportation, issued to the consignor a shipping receipt which stated that the bill of lading would be issued upon application at a place designated therein, and that the merchandise would be transported subject to the conditions expressed in the bill of lading, *held*, that the bill of lading and not the shipping receipt embodied the contract of the parties, and that the consignee would be bound by the conditions expressed in such bill of lading.

2. ———: ———: RUNNING CARS ON SUNDAY. The fact that the cars containing the merchandise were run and unloaded on Sunday, in alleged violation of the statute of Illinois, would not subject the carrier to liability, if the merchandise was destroyed.

*Appeal from Scott District Court.*

THURSDAY, DECEMBER 6.

THE plaintiff sues for the value of one case of smoking tobacco, lost, it is claimed, whilst in the possession of defendants as carriers. The defendant for answer alleges that by the terms of its contract, contained in its bill of lading, it undertook to transport said merchandise to its depot in Chicago, and forward the same in the usual course of business to plaintiff at Iowa City, and that it was agreed that defendant should not be liable for dangers of navigation, collisions, fires, etc. That the merchandise arrived at Chicago on Sunday morning, and because of the provisions of the Revised Statutes of the state of Illinois, punishing the disturbing of the peace and good order of society by labor, defendant could not lawfully

forward the merchandise on that day; and that, while the merchandise was in defendant's possession on said Sunday, it was, without defendant's fault or negligence, accidentally destroyed by fire. The cause was tried by the court, and judgment was rendered for defendant. The plaintiff appeals.

*Martin, Murphy & Lynch*, for the appellant.

*Stewart & White*, for the appellee.

DAY, CH. J. The evidence disclosed the following state of facts: On the second day of October, 1871, the plaintiff, a merchant in Iowa City, bought of Robert S. Bowne & Co., wholesale merchants in New York, one case of smoking tobacco of the value of $48.75. Bowne & Co. delivered this case of tobacco to defendant at St. John's Park depot in New York City, on the 3d day of October, and received therefor at the time a shipping receipt. On the 4th day of October, 1871, this shipping receipt was surrendered to defendant's agents at their office on Broadway, and a bill of lading for the merchandise was obtained. This bill of lading contained the following provision: "To be forwarded in like good order (dangers of navigation, collisions and fire, and loss occasioned by mob, riot, insurrection or rebellion, and all dangers incident to railroad transportation excepted) to Chicago depot only." On the 3d day of October, 1871, six o'clock P. M., the tobacco left the depot, bound for Chicago. The car in which the merchandise was shipped arrived over the Michigan Central Railroad, at the Michigan Central depot in Chicago, at nine o'clock Sunday morning, October 8, 1871. This was the terminal point of defendant's line in the direction of Iowa City. Freight for Iowa City departed from Chicago by the Chicago, Rock Island & Pacific Railway, the depot of which was situated about one and one-half miles from the Michigan Central depot, goods being hauled over that space by teams. The car in which the merchandise was transported was unloaded soon after its arrival in Chicago. On Sunday night occurred the memorable Chicago fire, in which the property in question was destroyed.

The plaintiff contends that, at the time the property in question was delivered at St. John's Park depot, an absolute unconditional contract was entered into to transport the same to Iowa City, and that this contract cannot be modified by the bill of lading subsequently issued. There is a conflict in the evidence as to the character of the shipping receipt executed at the time plaintiff's consignors delivered the merchandise to the defendant. The evidence introduced by defendant shows it to have been in the following form:

## "MERCHANTS' DESPATCH TRANSPORTATION CO."

### MARK PACKAGES "MERCHANTS' DESPATCH."

| Deliver at our ) St. John's Platform, 1st Laight ( For Bills of Lading apply |
| Depot.      )      Street.                ( at office, 535 Broadway. |

NEW YORK, October 3d, 1871.

Received, in apparent good order, by Merchants' Despatch Transportation Company, of Robert S. Bowne & Co., the following packages, to be forwarded subject to the conditions contained in the Bills of Lading of this Company, to the point to which Bill of Lading would be given:

| MARKS AND CONSIGNEE'S NAME. | |
| --- | --- |
| J. WILDE,<br><br>          Iowa City,<br><br>                    Iowa.<br>"Merchants' Despatch." | One Case Smoking Tobacco. |

*Goods for the Fast Train must be delivered before 4 o'clock, P. M.*

A finding that the receipt was in the form above set out would be entirely supported by the evidence, and as the court submitted no finding of facts, we must, in support of the general finding for defendant, presume that the court found the receipt to be in the form claimed by defendant. This receipt in express language negatives the idea that the contract was an unconditional one to transport to Iowa City. It advises the consignor where to apply for bills of lading, and provides that the merchandise is to be forwarded subject to the condi-

tions contained in the bills of lading, to the point to which bill of lading would be given. The consignors were notified that the contract was not the one which the law would imply from the simple delivery and receipt of the merchandise, but that it was to be such an one as should afterward be embodied in a printed and written bill of lading. The consignors might have procured the bill of lading before the goods were shipped, or might have directed that the goods be not moved until the bill of lading had been procured. Then, if the terms contained in the bill of lading were unsatisfactory or were not assented to, they might refuse to make the shipment. But having permitted the goods to go forward under an agreement that the terms of shipment should be contained in a bill of lading, they, and the consignees whose agents for this purpose they are, must be bound by whatever terms are in good faith inserted in the bill of lading. There is here no evidence of bad faith. The bill of lading is proved to be in the form that defendants had for some time been in the habit of employing. The case of *Bostinck v. The Baltimore & Ohio R. R. Co.*, 45 N. Y., 712, relied upon by appellant as on all fours with the present case, differs in a most essential particular. In that case the goods were delivered under a verbal contract for shipment. There was no agreement or understanding that the terms of shipment were to be embraced in a bill of lading. In this case the receipt given is itself in the nature of a contract that the terms of shipment shall be such as may thereafter be incorporated into a bill of lading to be executed.

II. Appellant claims that the loss of the goods was occasioned by the fault of defendant in running its cars in the

2. ——: ——: running cars on Sunday. State of Illinois and unloading the goods on Sunday, in violation of the laws of that State. The statute in question is as follows: "Any person who shall hereafter knowingly disturb the peace and good order of society by labor or amusement, on the first day of the week, commonly called Sunday (works of necessity and charity excepted), shall be fined on conviction thereof in any sum not exceeding $500." The language of this statute is peculiar. Under it the criminality of labor on Sunday seems to consist in know-

ingly disturbing the peace and good order of society. It would seem that labor is not punished as an offense unless it results in the disturbance of peace and good order. But, however that may be, we are not prepared to hold that this statute requires all railroads leading into the State of Illinois to stop at the state line and remain over Sunday. If this be its true construction, it is strange that we have no account of any prosecution for the weekly violations of it which have occurred ever since its passage, in 1869. As to the unloading of the merchandise, the evidence does not show that it would not have been destroyed if it had remained in the car. It is true the car in which the property in question was shipped was not destroyed. But it departed from Chicago at fifteen minutes past five o'clock on the day of its arrival. The fire did not commence until ten o'clock that night. *Non constat* that this car would not have been burned if it and the other cars at that point had remained at the depot loaded until the fire began. The judgment of the court below is

AFFIRMED.