Hull, J.
This action was brought by defendant in error against the-plaintiff in error to recover for the loss of a car of glass jars-that was delivered to the Big Four Railroad Company, so-called, at Muncie, Indiana, the Big Four Railroad Company there taking the fruit jars for shipment to Toledo over its-own line and the Cincinnati, Plamilton & Dayton Railway,, thus making a continuous line from. Muncie to- Toledo, and the C. H. & D. Ry. Co. being bound by the contract of shipment between the shipper at Muncie, Indiana and the Big-Four Railroad Company. The fruit jars were manufactured *327 and shipped by the Ball Brothers Glass Manufacturing Company of Muncie, Indiana, to Berdan & Company who became the-owners of them when they were placed on board the cars. They were transported from Muncie to the city of Toledo, and after' reaching Toledo, when they were in the yards of the C. H. & D. Company, they were burned, the fire originating in the warehouse of the Michigan Central Railroad Company and being communicated to the car in which these fruit jars were at thetime, the carload of merchandise being thus destroyed. Berdan & Co. brought action against the C. H. & D. Ry. Co. upon its-common law liability as a common carrier, alleging that these fruit jars were delivered to the railroad company for transportation and that they had not delivered to them according to theircontract, and they therefore asked damages for their value, to-wit, $587.50. The case was tried in the court of common pleas- and the jury returned a verdict against the railroad company for the full amount named, with interest, and judgment was entered', thereon, and it was to reverse this judgment that this proceeding in error was brought here.
The question in the case is, whether any contract was made between the Ball Brothers Glass Manufacturing Company and' the railroad company limiting the common law liability of therailroad company, the railroad company claiming that there was such a contract made and entered into with the shipper andi that Berdan & Company standing in its place, are, by the facts of the case, estopped from denying that such a contract was made. The plaintiff, on the other hand, denies that there was such a contract made, limiting the common law liability of therailroad company, and claim and aver that if such a contract was made, it was void, illegal and. contrary to public policy. The petition sets forth succinctly and briefly the delivery of" these goods to the railroad company for shipment from Muncie, Indiana, to Toledo, and that the goods were not delivered to-the plaintiff, but were lost by the default of the defendant, and. asks judgment for their value.
The answer contains two causes of defense. In its first cause of defense the .railroad company pleads the special contract to' which-I have referred and which it claims was entered into between the shipper a.t Muncie, Indiana, and the Big Four Railroad Company. They say in their answer that:
*328 “On the 21st day of June, 1899, Ball Brothers Glass Manufacturing Company and said The Cleveland, Cincinnati, Chicago & St. Louis Railway Company entered into a certain contract, wherein and whereby said Ball Brothers Glass Manufacturing Company delivered to said The Cleveland, Cincinnati, Chicago & St. Louis Railway Company, at said city of Muncie, 300 cases pint glass fruit jars, 1200 cases quart fruit jars and 300 cases half-gallon fruit jars, for transportation to said plaintiff at said city of Toledo, and wherein and whereby said railway company, in consideration of the sum of $31.10 thereafter to be paid it, did agree to carry said goods to said city of Toledo, and there deliver the same to said plaintiff, if said city of Toledo were on its line of railway, otherwise to deliver the same to another carrier on the route to said destination.
And the answer then avers:
“By'said contract it was mutually agreed by.and between said Ball Brothers Glass Manufacturing Company and said The Cleveland, Cincinnati, Chicago & St. Louis Railway Company that, as to each party, at any time interested in all or any of said property, and as to each carrier of all or any of said property, over all or any portion of said route to said destination, every service, to be performed thereunder, should be subject to all the conditions therein contained, which were thereby agreed to by said Ball Brothers Glass Manufacturing Company, accepted for itself and its assigns as just and reasonable.
“Said contract contained certain conditions and provisions whereby, and it was thereby, among other things, expressly agreed, by and between said Ball Brothers Glass Manufacturing Company and said The Cleveland, Cincinnati, Chicago 8t St. Louis Railway Company, that any carrier or party, in possession of all or any of said property, should not be liable for any loss thereof or damage thereto, by causes beyond its control, or by floods or by fire, * *
This last provision referring to loss by ‘fire is the one that is counted upon here by the railroad company exempting and excusing it, as it is claimed, for all loss by fire not due to its own negligence, these goods having been destroyed as it is conceded and as the evidence shows, by fire. The answer then proceeds to *329 allege, that these goods were delivered to the railway company and by it received for transportation to Toledo, subject to the terms and conditions of said contract; that they were transported to the city of Toledo and shortly after arrived; that while still in the car and standing on tracks in the city of Toledo, this fire occurred and these goods were burned up, without any fault or negligence on the part of the railroad company.
For their second defense, after setting forth that such a contract was made between the shipper — which would also bind Berdan & Co. — and the railroad company, they plead an estoppel growing out of the facts as they claim them in the case, claiming that Berdan & Co., if they did not expressly agree to these conditions which were in the- bill of lading, are estopped by the conduct of the shipper and by the facts from denying that such agreement was enteredlnto, and they say, in the second cause of defense:
“On the 2isc day of June, 1899, and continuously for a long time prior thereto Ball Brothers Glass Manufacturing Company was engaged in the manufacture of glass jars at the city of Muncie, in the state of Indiana, and said The Cleveland, Cincinnati, Chicago & St. Touis Railway Company was engaged in the transportation of freight from said -city for said Manufacturing Company.
“On said date, and continuously for a long time prior thereto, there was in use a certain custom adopted by, known to, and acquiesced in by said manufacturing company and said' railway company, whereby whenever said manufacturing company desired to transport freight from said city of Muncie, over the line of railway of said railroad company, said manufacturing company should load said freight into a car, should' seal and tender the same to said railway company, together with a certain writing, prepared by said manufacturing company, containing a description of said car and the contents-thereof, the destination of the same, to whom to be delivered, the rate to be charged therefor, and a statement that said' freight should be transported subject to the conditions contained in said railway company’s bill of lading, and thereupon said railroad company should sign said paper writing, return *330 the same to said manufacturing company, in lieu of its bill of lading, and accept and transport said freight subject to the conditions contained in said bill of lading.
“On said 21st day of June, 1899, in accordance with said custom, said manufacturing company tendered said railway company, at Muncie, Ind., a certain car, known and designated as C. C. C. & St. L. No. 9074, which had been loaded and sealed by said manufacturing company, and contained the freight described and set forth in the first cause of defense, and a certain paper writing wherein was set forth a description of said car, and the contents thereof to be delivered to said plaintiff, at Toledo, Ohio, in consideration of ten cents per hundred pounds to be paid therefor, and to be transported subject to the conditions contained in said railway company’s bill of lading, by way of its line of railway and that of this defendant.Thereupon and in accordance with said custom aforesaid, said railway company signed said writing and returned the same to said manufacturing company, in lieu of its bill of lading, accepted said freight and agreed to transport the same as in said paper writing directed; subject, however, to the conditions contained in its bill of lading.
“On said date, and for some time prior thereto, the bill of lading issued and used by said railroad company contained, among other certain conditions subject to which freight was •accepted for transportation, and which were, in substance, as follows, to-wit: That it was mutually agreed, in consideration of the rate of freight therein named, as to each carrier of all or any property, over all or any portion of said route to destination and as to each party at any time interested in all or any of said property that every service to be performed thereunder, should be subject to all the conditions therein contained, whether printed or written, and which were thereby agreed to by the shipper, and by him accepted for himself and his assigns as just and reasonable, and that no carrier or party in possession of all or any of the property accepted for transportation, should be liable for any loss thereof or damage thereto by causes beyond its control, or by floods or by fire, and that the amount of any loss or damage to which any carrier became liable should be computed at the value of the property at the place and time of shipment,” etc.
*331 They then say that they received this property for shipment subject to these conditions in the bill of lading, and they say finally:
“By reason of the premises aforesaid plaintiff is estopped from denying that the conditions contained in the bill of lading ■of said The Cleveland, Cincinnati, Chicago & St. Louis Railway company were a part of the contract under and by virtue of which said freight was accepted by said railroad com.pany for transportation.”
The plaintiff replied to the answer, denying that any such ■ contract was made; and denying that it was estopped by any of ■the facts in the premises, and alleged further in an amendment to the reply, that if any such limitation was made that it was void.
. The case came on for trial, and the court of common pleas, after the evidence was in, left the question to the jury in the ■charge to say whether the shipper had agreed to the said con■ditions contained in the bill of lading or not, and the jury were charged that if they had so agreed, that if they had knowledge •of these conditions contained in the bill of lading and agreed to them, that they would be bound thereby, but if they had not in fact agreed to it and in fact had no knowledge that it was •contained in the bill of lading, that the shipper would not be bound thereby.
The jury returned a general verdict in favor of the plaintiff 'for the full amount. The jury, besides that, returned a special verdict, or, rather, answered three interrogatories, as follows:
1. Was the fire by which the property described in the petition destroyed, occasioned by any negligence or want of care •on the part of the defendant? Answer: No.
2. Was the defendant guilty of any negligence or want of •care in putting the property described in the petition in the ■place it was, when destroyed by fire? Answer: No.
3. Could the defendant, by the exercise of the greatest care and diligence, after [he fire was discovered, have prevented the loss and destruction of the property described in the petition? Answer: No.
After the return of the general verdict the defendant below filed a motion for judgment notwithstanding the general ver *332 diet, claiming that it was entitled to a. judgment upon the answers to the interrogatories. This motion being overruled, a motion for a new trial was filed, which was also overruled and judgment entered.
Thei e is substantially no dispute, we may say none whatever, as to the facts in this case. The undisputed evidence shows that at the time in question Ball Brothers were engaged in the manufacture or glass, at Muncie, Indiana, and that on the 2ist day o'. June, [899, they loaded this car at their manufacturing establishment with this carload of merchandise and sealed it, whereupon the employes of the manufacturing company delivered it to the railway company and at the same time delivered to it a shipping receipt, which is attached to the bill of exceptions marked Exhibit No. 1, and is in this language:
■ “Received in good order from Ball Brothers Mfg. Co. by the C. C. C. & St. R. Railway Co., the articles named below, to be delivered in like good order, without delay to Berdan & Co., at the station at Toledo, Ohio. Subject to the terms and conditions of the R. R. Co’s bill of lading. Rate 10c per ioofbs. from Muncie to Toledo.”
- Then there follows a description of the property^. This shipping receipt was signed by the agent of the railway company, and returned to Ball Brothers Glass Manufacturing Co., in lieu of a bill of lading. For ten years it had been the custom of the company in making shipments to prepare shipping receipts for their own goods, the evidence showing that for ten years prior to this time these shipping receipts were prepared by the Manufacturing Company themselves, they having been informed by the railway company what form would be acceptable to the Railway Company, and what they would accept in lieu of issuing a regular bill of lading. The words: “Subject to the terms and conditions of the Railroad Company’s bill of lading” were placed in this form by the Manufacturing Company, because the Railway Company insisted upon this provision before they would accept such receipt in lieu of a regular bill of lading. At this time, when these goods were shipped and when they were delivered to the Railway Company with the shipping bill containing the language io which I have referred, the regular bill of lading of the Railway Company *333 contained this provision: “No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto, by causes beyond its control; or by floods or by fire” etc. This form of a bill of lading has been in use by the Railway Company, for six or seven years before the date of this shipment. Under this state of facts, this method of shipment and this form of receipt this car of goods was delivered to. the Railway Company, by the Glass Manufacturing Company, and the car went on its way to Toledo and no other bill of lading was issued. The evidence shows that the car arrived at Toledo on the 25th day of June, some three or four days after it was received at Muncie, and, as I have said, very soon after that was destroyed by fire. The question in the case is, whether, under this state of facts the shipper should be held, as a matter of law, to have agreed to this condition in the bill of lading; or, if not, whether under the facts the shipper should be held to be estopped from denying that he had agreed to that condition ? It is well established that, in the absence of any agreement to the contrary a common carrier is liable for the loss of goods, whether by his own negligence or not, unless due to the act of God or the public enemy; but it is equally well settled in this state, that a common ' carrier may limit his common law liability by a fair contract, but that he cannot limit or avoid his liability for his own negligence. The law is laid down in Graham & Co. v. Davis & Co., 4 Ohio St., 362,and in several other cases thereafter. The supreme court there says, in the syllabus:
“A common carrier, by special contract with the owner of goods intrusted to him, may so far restrict his common law liability as to exonerate himself from losses arising from causes over which he had no control, and to which his own fault or negligence in no way contributed.”
It is also determined in this state that a shipper is bound by the conditions of a bill of lading which he accepts at the time ot shipping the goods, although'he does not sign the bill of lading or agree to it in writing, if it is signed by the railroad company and he accepts it. C. H. & D. R. R. Co. et al. v. Pontius *334 and Richmond, 19 Ohio St., 222. I read a paragraph from the syllabus:
“A bill of lading signed by the company’s receiving agent, and accepted and acquiesced in by the consignor, is binding upon the latter, although not signed by him; and the terms and conditions of the contract expressed therein cannot be contradicted by parol proof.”
On page 237, the court says:
“The general law on this question is discussed in the leading case of Gaines v. Transportation & Insurance Co., 28 Ohio St., p. 418, where the court says:
“The general carrier may limit his common law liability for Josses happening to the goods without fault or negligence on his part by a special agreement fairly made by the parties.
“When a carrier claims exemption from such liability, under a bill of lading not signed by the owner or consignor of the goods, he must aver and prove that such bill was .assented to-by the shipper.
“Whether such assent has been given, so as to make the bill of lading binding on the shipper, is a fact to be proved, and cannot be imphed or presumed contrary to the facts, when the acts of the shipper do not operate as an estoppel.”
The answer in this case was drawn by counsel to meet the requirements of this decision and sets up two defenses: First, that the shipper agreed to the conditions of the bill of lading and assented thereto. Second, setting forth the facts it is alleged as a mattter of law that the shipper is estopped by the facts from denying that he agreed to the terms of the bill of lading.
The court charged the jury that:
“If Ball Brothers Company, when they prepared the shipping receipt, knew that the bill of lading then in use by the Big Four Company, contained a condition that the carrier was not liable for a loss by fire, then it was bound by that condition, and in preparing and tendering the shipping receipt containing those words, “subject to the terms and conditions of the railroad company’s bill of lading,” it would be regarded as assenting to that condition — if they knew that that condition was in the company’s regular bill of lading in use at that time. *335 But if it is not shown by the evidence that Ball Brothers Company knew that the bill of lading contained such a condition, then it cannot be regarded as assenting to it. No bill of lading having been issued in this case, there can be no assent to its terms and conditions, nor acquiescence in its terms and conditions, without knowledge. Whether or not Ball Brothers Company knew of the conditions must be determined by you from all the facts and circumstances in the case. Under these rules you will consider and analyse and weigh all the evidence.”
So that under the instructions to the jury to entitle the defendant to a verdict, it was necessary for the jury to find that the Ball Brothers Company in fact, at the time of this shipment knew that this condition was contained in the bill of lading at that time, otherwise, as the court instructed the jury, they would not be bound by that condition.
The evidence in the case showed — the testimony of the officers of the Ball Brothers Company having been taken, including that of the president — that these shipping bills were prepared by their bookkeeper, in their office, and were sent with the car when it was delivered to the railway company. The president of the company testified that he knew that the railway company issued bills of lading; that they were issued to other customers, at Muncie, Indiana, and he says others made up their accounts on those bills of lading. He is asked whether he ever' read any of them, and he says: “I never read their bill of lading, and while I know there are copies of their bill of lading furnished to the shippers, on which they are supposed to make out their account, yet, not having read it, I am not positive as to what it contains.”
Q. Referring, now, to Exhibit No. i, I call your attention to 'the words, “Subject to the terms and conditions of the railroad company's bill of lading,” and ask you if you know why or how those words happened to be inserted in that shipping receipt?” A. I believe the railroad companies required that clause before they would accept it in place of their regular printed sheet.
Q. State if you know whether the railroad company will receive goods from you without that provision in the receipt, or without giving you a regular bill of lading? A. I don’t know *336 ¡that we ever offered them goods, except in connection with ■their regular bill of lading or this substitute. This substitute was prepared after ascertaining what would be acceptable to the railroad company.
Q. This shipping receipt is used, then, instead of the regular bill of lading, as I understand you? A. Yes, sir.
Q. State if you know whether the railroad company requires either the regular bill of lading, or a shipping receipt .similar to this ? A. They do.
<Q. Before they will ship goods? A. They do.
Q. You knew in 1899, and for some time before that, that the 'contracts made by railroad companies in the shipment of goods ^contained certain conditions, did you not’ A. I knew that they contained conditions. I was not altogether familiar with ■■all the conditions that they did contain.
Q. You knew, however, that the railroad company would ■not accept this shipment for transportation except subject to the conditions contained in its bill of lading? A. Yes, sir.
Q. Otherwise, as I understand, the company would have issued to you its regular bill of lading? A. Yes, sir.
So that it appears uncontradicted in the testimony from the evidence of the officers of the Ball Brothers Glass Manufacturing Company, that they knew that the railway company issued bills of lading; that they had bills of lading; that they might have bills of lading if they desired them, or, if they preferred this way of shipping, they could send their shipping receipts to the railway company’s office, and if they contained this provision they would be acceptable to the railway company, and this •arrangement was adopted as a matter of convenience to the ■shipper as well as to the railway company, to avoid the necessity of procuring from the railway company a regular bill of lading before the goods were accepted. There is no evidence in the record that there was any fraud about this on the part of the railway company or its officers; that there was any attempt to conceal from the shipper the conditions of the regular bill ■of lading which the evidence shows had been in use for about ■seven years at this time. And this provision limiting the railway company’s liability against loss by fire, unless occasioned by its own negligence,.is an ordinary condition in a bill of lad *337 ing, and is not such a condition as would be against public policy or would be held in our judgment to be void, for any reason; but such condition has been sustained by the courts. We hold that this condition in this bill of lading, if it was binding upon Berdan & Co., was a valid condition so far as it limited the liability of the railroad company to fire not occasioned by its own negligence.
The evidence in the case shows that the shipper knew that there were conditions in the regular bill of lading of the railway company; the Ball Brothers Company knew that they were not shipping these goods upon a common law contract — • that there were some conditions in the bill of lading — for they are referred to in the shipping receipt which they used. The-evidence shows that'they might have seen the bill of lading if they had seen fit; that they might have had a regular bill of lading issued to them if they had desired, but they preferred this way and they signed and delivered to the railway company this written receipt and the company accepted the goods for shipment upon these conditions, and upon that written proposition the goods were taken by the railway company for transportation to Toledo.
Now in our judgment, whether the Bal! Brothers Company through their officers, had actual knowledge of this condition contained in the bill of lading or not, under these facts and circumstances undisputed in the record, they are bound and were bound by this condition named in the bill of lading. Having made this written request to the railway company to ship their goods, knowing that they would not be accepted unless this provision was in the paper; knowing that this was in lieu of a regular bill of lading; knowing that they might examine the regular bill of lading if they saw fit; knowing of this requirement of the railway company, and that the goods were not being taken unconditionally by them, they are estopped from denying that they had knowledge of this condition so contained in the bill of lading. The bill of lading thus became a part of the contract as a matter of law between the railway company and the shipper. It does not seem to us that these facts can be reconciled, with fair dealing and justice in any other way. There was no concealment or fraud or misleading about *338 it, so far as we are able to discover. If it was applied to any other question except ihat of the liability of a common carrier, it would seem that there would be no question, but that if such a proposition were made and accepted, the parties would be bound by it.
But common carriers may limit their liability, and in this case they undertook to do it and adopted this means in lieu of a regular bill of lading. There is an Iowa case which seems to us directly in point and lays down the law as we understand it. The case is found in Wilder v. Merchant's Despatch Transportation Co., 47 Ia., 272. The syllabus is ■
“Where a common carrier upon the delivery of merchandise for transportation, issued to the consignor a shipping receipt which stated that the bill of lading would be issued upon application at a place designated therein, and that the merchandise would be transported subject to the conditions expressed in the bill, held,, that the bill of lading and not the shipping receipt embodied the contract of the parties,-and that, the consignee would be bound by the conditions expressed in such bill of lading.”
The court say, in the opinion on page 275:
“The consignors were notified that the contract was not. the one which the law would imply from the simple delivery and receipt of the merchandise, but that it was to be such an one as should afterwards be embodied in a printed and written bill of lading. The consignors might have produced the bill of lading before the goods were shipped, or might have directed that the goods be not moved until the bill of lading had been procured. Then, if the terms contained in the bill of lading were unsatisfactory or were not assented to they might refuse to make the shipment. But having permitted the goods to go forward under an agreement that the terms of shipment should be contained in a bill of lading, they, and tJtte consignees whose agents for this purpose they are, must be bound by whatever terms are in good faith inserted in the bill of lading. There is here no evidence of bad faith. The bill of lading is proved to be in the form that defendants had for some time been in the habit of employing.”
■ And they hold that the shipper there was bound by the con *339 ditions named in the bill of lading, and we think that the reasoning of that court is sound and that under the facts in this case Ihe bill of lading became a part of the contract between these parties whether the shippers had notice and knowledge of these conditions in it or not. The jury found that there was no negligence on the part of the railroad company; that the goods were burned and that the railway, company could not by the exercise of the highest degree of care have prevented their destruction. So that under this contract which we find existed between the railway company and the shipper, there being a finding by the jury that there was no negligence, the defendant was not liable for the loss of the goods, the bill of lading containing the condition that they would not be liable for fire and the jury finding that they were not burned through their negligence.
Swa-yne, Hayes & Tyler, for Plaintiff in Error.
Ralph S. Holbrook, for Defendant in Error.
In our judgment, therefore, the defendant below was entitled to have judgment in its favor notwithstanding the general verdict, upon these special findings of the jury; and, being of that opinion, the judgment of the court of common pleas will be reversed and set aside, and judgment entered in favor of the plaintiff in error, defendant below, upon the special verdict of the jury, notwithstanding the general verdict.